**In the Matter of the WELFARE OF J.J.L.B., K.S.B., and T.M.B.**

No. C3–86–474.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Review Denied Dec. 17, 1986.

Andrew J. Wambach, Jr., Mahnomen, for appellant.

James E. O'Gorman, Sp. Asst. Norman Co. Atty., Thorwaldsen, Beeson, Malmstrom & Sorum, Detroit Lakes, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

The trial court terminated appellant's parental rights after finding her children were neglected and in foster care. Appellant claims the evidence does not support the determination, the trial court made inadequate findings, the county prejudicially delayed in making a foster placement plan, and the trial court improperly admitted hearsay. We affirm.

## FACTS

On Christmas day, 1981, at approximately 5:00 a.m. appellant Eileen Burley and her husband Bert Wilson engaged in a violent fight that ended when appellant hit Wilson over the head with a hammer, causing a large cut on his head. The sheriff came to the house and temporarily took custody of appellant's three children. Shortly thereafter a neglect petition was filed and a hearing was held. At the hearing evidence of the fight between appellant and Wilson was introduced. There was also evidence that the house was extremely dirty, the children were very dirty, they had head lice, and they missed almost all of the 1981–82 school year. The court adjudged the children neglected. The court ordered

the children placed in the care of Norman County, but stayed commitment and ordered the children returned to appellant with the condition that she not leave the state.

In March 1982 appellant and Wilson were divorced. In April 1982 appellant removed the children from Minnesota, in violation of the court order. When appellant returned to the state the court revoked placement of the children with appellant and ordered the children placed in the custody of the Norman County Social Service Department. The children were then placed in a foster home where they still remain.

A number of custody reports, psychological reports, and review hearings have followed. On September 30, 1982, the court continued placement of the children and ordered appellant to cooperate with the county social service department and to attend all recommended psychological evaluations, training and counseling. By order dated April 28, 1983 the court found that appellant had failed to cooperate with the Norman County Social Service Department and had showed no evidence that she had developed appropriate parenting skills.

The April 1983 court disposition ordered appellant to commence regular, at least monthly, contacts with the children. The court also ordered appellant to accomplish certain goals before regaining custody of her children. First, appellant was required to maintain a clean and suitable home for herself and her children. Second, she had to establish and maintain a stable living situation, including abstaining from using alcohol and abstaining from any aggressive, assaultive and abusive behavior. Third, she had to obtain and maintain sufficient employment to maintain herself and her children. Finally, she had to cooperate fully with all recommended psychological evaluations, training and counseling.

In the summer of 1983 the children visited appellant on two occasions. When the children returned to the foster home they were extremely disobedient and argumentative because of comments made to them by appellant.

After traveling around the country with a carnival, appellant settled down at about this time in North Dakota. Norman County entered into an interstate compact with North Dakota and appellant was assigned to see a Richland County Social Worker, Scott Boss. In a report dated December 23, 1983, Boss stated that he would support a termination petition because appellant had not been able to maintain a residence or employment, she had failed to keep appointments with the agency, and she responded with anger and threats to the stress of dealing with the social service center.

Appellant then moved to South Dakota where she had contacts with another social service agency. A home study was attempted between June 1984 and August 1984. During the initial contact at the county agency, appellant became angry and walked out. She then proceeded to schedule and then cancel numerous appointments for the social worker to come to her house. The report was ultimately made based only on two office visits and one home visit. Because appellant canceled so many appointments, the home study report was incomplete and made no recommendation. The report did note that appellant was very difficult to work with and quick to anger, blaming others for what happened.

In September 1984 appellant attended the first of six psychological counseling sessions with Larry McClusky, a staff psychologist in Watertown, South Dakota. McClusky felt appellant was a hostile, aggressive and bitter person. He felt she was impulsive, apt to deny problems, often exercised poor judgment and failed to learn from experience. He felt that the prognosis for treatment was dim.

Appellant moved the court to appoint another psychologist to examine her and the children. When the court did appoint a psychologist, appellant failed to appear for the scheduled appointment. After examining the children and reviewing lengthy reports concerning appellant, the court-appointed psychologist stated that he could

find no basis on which to advocate returning the children to the custody of appellant.

During this time Dr. William Rooney, a licensed consulting psychiatrist, examined the children. He reported that when the children initially entered the foster home they had major problems, but that they had improved emotionally and psychologically since then. Dr. Rooney noted that the children were extremely jealous of one another. He felt that there was an abnormally intense sibling rivalry because of the children's lack of attention from appellant when they were younger. He felt the children needed a parent who was consistent, patient, non-violent, self-disciplined and who lived in a stable environment. Based on the social workers' reports and reports from other psychologists, Dr. Rooney felt appellant could not give the children what they needed and that returning the children to appellant would be "useless and detrimental." He also felt that although it was not impossible for appellant to change it was "highly unlikely and highly improbable."

On December 14, 1984 a foster placement plan was finished. The plan noted that the original reason for placement of the children was violence in the home, neglecting to keep the children in school and violations of court orders. The plan stated that before the children would be returned to appellant she must maintain a means of livelihood, seek therapy, inform the social service department of any address or telephone number changes, and must be prepared to have adequate housing.

On October 1, 1985 a petition for termination of appellant's parental rights was filed. The petition alleged that the children were neglected and in foster care, thus justifying termination under Minn.Stat. § 260.221(b)(7).

Dr. Rooney reiterated his earlier diagnosis of the children and appellant. Over appellant's counsel's objections, Dr. Rooney also testified about possible sexual abuse of one of the children when she lived with appellant.

The Norman County social worker assigned to the case, James Bjornstad, testified about the various services offered to appellant by different social service agencies. He felt that appellant made inadequate efforts to avail herself of these services, as she consistently canceled appointments and failed to complete programs.

Appellant also took the stand. She testified that she had settled down in Watertown, South Dakota, where she had lived for almost two years. She stated that she did not drink or use drugs and has tried to follow the county's guidelines. She testified that she loved her children and was angry that the county took them away. Although she claimed she had improved her behavior, she also testified that she did not contact the social service workers regularly, nor did she try to find out what she had to do to get her children back. She also admitted that she did not go to parenting classes.

The foster parents testified. They stated that when the children were first placed with them the children fought, were very distrustful, and very insecure. They felt the children had improved significantly since then. They testified that appellant did not visit the children very often and that when she did visit, she spent more time with the foster parents than with the children.

The children also testified. Although none of the children criticized their foster parents, they all testified that they would like to move back with their mother. Testimony from other witnesses and reports, however, suggested that the children had earlier been rather equivocal on whether they wanted to return to appellant.

The trial court also received a report from the children's guardian ad litem. She seriously doubted appellant's ability to be consistent and available to her children and felt appellant's poor judgment would hurt the children who needed special help. Because appellant had not shown the motivation or commitment to learn how to help

her children, the guardian recommended terminating appellant's parental rights.

The trial court made very detailed findings of fact, chronicling appellant's and her children's problems. The court concluded that the state had shown by clear and convincing evidence that the children were neglected and in foster care. The court therefore terminated the appellant's parental rights to her children. In a memorandum the court stated that appellant had failed to comply with the reasonable and appropriate expectations of the county and that she had made little adjustment to her circumstances. Appellant moved for amended findings or a new trial and the trial court denied the motion.

## ISSUES

1. Does the evidence support the trial court's decision to terminate appellant's parental rights?

2. Did the trial court make adequate findings?

3. Should the judgment be reversed because the county did not present a formal family case plan until two years after the children were originally placed in foster care?

4. Did the trial court commit reversible error in allowing hearsay statements made by a child under age ten concerning alleged sexual abuse of that child?

## ANALYSIS

■ 1. In termination proceedings the petitioner has the heavy burden of proving by clear and convincing evidence that there are statutory grounds for termination. *Welfare of Rosenbloom,* 266 N.W.2d 888, 889 (Minn.1978). The evidence relating to termination must address conditions which exist at the time of the hearing and it must appear that these conditions will continue for a prolonged, indeterminate period. *Welfare of R.M.M. III,* 316 N.W.2d 538, 542 (Minn.1982). The trial court must make clear and specific findings which conform to the statutory requirements for termination. *Welfare of Chosa,*

290 N.W.2d 766, 769 (Minn.1980). On appeal, the trial court's findings of fact will not be overturned unless clearly erroneous, but this court will exercise great caution and find termination proper only when the evidence clearly mandates termination in accordance with the statutory grounds. *Welfare of Solomon,* 291 N.W.2d 364, 367 (Minn.1980).

■ The trial court terminated appellant's parental rights pursuant to Minn. Stat. § 260.221(b)(7) (1984) because it found the children neglected and in foster care. In determining whether children are neglected and in foster care, the court must examine numerous factors. The court must consider the length of time the children have been in foster care, and the parent's visitation record during the previous nine months. The court must also consider the parent's efforts to adjust her circumstances, conduct, or condition to make it in the children's best interest to return them to their home in the foreseeable future. Finally, the court must evaluate the appropriateness of services offered to the parents and whether additional services would likely bring about lasting parental adjustments enabling a return of the children within an ascertainable period of time. *See* Minn.Stat. § 260.155, subd. 7 (1984). *See Welfare of P.J.K.,* 369 N.W.2d 286, 291–92 (Minn.1985).

■ In the present case the children had been in foster care for four years. The court found that within the past nine months appellant had telephone conversations with the children or visited them "from time to time." Testimony from the foster parents concerning these visits shows that appellant did not spend very much time with her children when she did visit them. Although appellant has made some efforts to adjust her circumstances, her efforts have been minimal. She refused to use most of the rehabilitative services offered her and has failed to keep in contact with social service personnel despite their more than adequate efforts to help her. Her behavior throughout the entire proceedings has been to schedule

appointments, break them, and to blame others for her problems. Finally, the reports of professionals involved in the case were consistent in concluding that additional services would probably not bring about a parental adjustment which would enable the return of the children to appellant. Because of the clear weight of this evidence, we believe the trial court did not err in finding the children neglected and in foster care.

██ 2. Appellant also contends that the trial court made inadequate findings by failing to find that appellant's alleged misconduct would continue for a prolonged, indefinite period of time or that her prognosis for change was not at least fair. Appellant is correct in stating that the trial court must find that appellant's misconduct will continue for a prolonged, indefinite period. *See Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980). However, appellant is incorrect in stating the trial court failed to make such a finding. The court specifically found that additional services to appellant would not likely bring about a positive change. Consequently, the finding was that appellant's misconduct would continue indefinitely. Appellant is also correct in stating that the trial court must base its decision on appellant's current condition, and not dwell exclusively on the past. *Id.* Although the court did note appellant's problems in the past, the court's decision was based on testimony that appellant had not and could not change. The decision was therefore based on appellant's current condition.

3. Appellant next contends that the judgment should be reversed because the county failed to make a timely foster placement plan. When a child is determined dependent and placed in a foster home a written case plan must be provided to the parents within thirty days after the child is placed in a residential facility by court order. Minn.Stat. § 257.071 subd. 1 (1984). This case plan describes the reasons for the placement of the child, specific actions which the parent can take to correct the problems which led to the placement, the

social services to be provided to the parent, and the date on which the child is expected to be returned to the parent. *Id.* This case plan is required in every case. *Welfare of R.M.M. III,* 316 N.W.2d 538, 542 (Minn.1982). Appellant contends that the county's failure to provide her with a written plan until December 1984, nearly two years after the children were placed in foster care, warrants reversal.

██ Although the county did fail to provide appellant with a written plan in a timely manner, appellant's argument must fail. First, the county's failure to timely provide appellant with a case plan was in part a result of appellant's failure to cooperate and transitory lifestyle. Second, the purpose of the case plan is to give parents a guideline for correcting the conditions leading to the determination of dependency. *Welfare of Copus,* 356 N.W.2d 363, 366 (Minn.Ct.App.1984). In the present case appellant was given guidelines for correcting her problems as early as January 1982 when a court ordered appellant to attend parenting classes and to learn impulse control. In September 1982 appellant was told she would have to maintain a home for the children, a stable personal life, and refrain from drinking or fighting. These conditions were reiterated in April 1983, when the court order placed four conditions on appellant's repossession of her children. Given appellant's failure to cooperate and the fact that the underlying purpose for the case plan was met through numerous court orders, we cannot say that this is reversible error.

4. Appellant's final argument is that the trial court committed reversible error in allowing introduction of hearsay statements concerning possible sexual abuse of one of the children. The statement which appellant claims was erroneously accepted was when Dr. Rooney testified that the foster mother told him the child had acted inappropriately sexually. Appellant claims that this evidence was admitted in violation of Minn.Stat. § 260.156, which provides that an out of court statement made by a child under ten years of age alleging any

act of sexual contact performed with or on the child by another is not admissible in evidence in a proceeding for termination of parental rights unless the proponent of the statement notifies the other parties of his intention to offer the statement sufficiently in advance of the proceeding to provide the parties with a fair opportunity to meet the statement.

 The problem with appellant's argument is that the hearsay statement was never made by the child. The hearsay statement was made by the foster mother who said the child had acted inappropriately sexually. Specifically, the foster mother told Dr. Rooney that the child had been involved in an inappropriate sexual role playing with another neighbor child. The foster mother did not say that the child told her about this. Therefore the statement was not admitted in violation of Minn.Stat. § 260.156.

### DECISION

Because the evidence supports the trial court's findings, the findings were adequate, the delay in the formal case plan was not prejudicial, and hearsay evidence was not improperly admitted, we affirm.

Affirmed.