*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0415**

In the Matter of the Welfare of the Children of:
M. S. H. and X. L. H., Parents

**Filed August 11, 2014
Affirmed
Hooten, Judge**

Brown County District Court
File No. 08-JV-13-151

Thomas K. Hagen, Rosengren Kohlmeyer Law Office Chtd., Mankato, Minnesota (for appellant X.L.H.)

Mark E. Betters, Betters Weinandt, Mankato, Minnesota (for M.S.H.)

Robert D. Hinnenthal, Brown County Attorney, George R. Kennedy, Assistant County Attorney, New Ulm, Minnesota (for respondent county)

Marilyn Mueller, St. James, Minnesota (guardian ad litem)

        Considered and decided by Johnson, Presiding Judge; Hooten, Judge; and Harten,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant-father X.L.H. argues that because respondent Brown County's efforts to reunite father's family were inadequate, the district court should not have terminated father's parental rights. We affirm.

## FACTS

The children, who are the subject of this proceeding, were born in 2010 and 2012. In late 2012, father left Minnesota to avoid criminal charges. When he returned in December 2012, he was arrested. Also in December 2012, the county petitioned the district court to adjudicate the children as children in need of protection or services (CHIPS). Both father and the children's mother admitted the petition.

After father's chemical health assessment, the district court ordered that (a) father was to complete inpatient chemical dependency treatment and follow all recommendations upon release; (b) father's visitation with the children would depend on the results of his inpatient chemical dependency treatment; and (c) father was to follow the terms of his probation on a criminal charge, remain law abiding, maintain contact with the county, and meet with the child protection worker and the guardian ad litem (GAL) to develop a case plan. The case plan resulting from father's meeting included chemical dependency treatment through his probation.

On April 3, 2013, the children's mother obtained an ex parte order for protection (OFP) against father, prohibiting him from having contact with her for a year. Father did not request a hearing or otherwise challenge the OFP.

2

After a review hearing, the district court awarded father supervised visitation with the children. The GAL sent father a text message with the requirements for visitation, and father responded, stating that he understood the requirements but needed financial assistance to pay for the time at the visitation center.

In April 2013, as recommended by his inpatient chemical dependency treatment program, father moved to a halfway house. While there, father asked the GAL for help getting a state identity card so he could get a job. The GAL suggested that he contact the staff at the halfway house. The next day, the child protection worker called father to set up visitation. But because father did not answer his phone and had not activated the voicemail, she was unable to leave a voicemail. The child protection worker sent father a text message about scheduling visitation. Father returned neither the phone call nor the text message.

On May 8, 2013, father absconded from the halfway house, resulting in his discharge from treatment and, later, his arrest. After a June 5, 2013 review hearing, the district court deferred addressing father's case pending resolution of a probation violation that father had in another county. Father did not attend a subsequent July 8, 2013 review hearing.

On July 12, 2013, father was arrested for violating mother's OFP. Because the arresting officers believed father to be under the influence of a controlled substance at the time of arrest, they took him to the emergency room, which later discharged him to detox. Two weeks after father's release, law enforcement re-arrested father for using drugs again. Father was accepted into drug court on September 23, 2013. After a chemical

3

dependency assessment, he started intensively supervised outpatient treatment. But he relapsed and again was moved to inpatient treatment. He later completed this portion of his treatment and transferred to a halfway house.

While father was in inpatient treatment, the county petitioned to terminate the parental rights of both parents. The district court authorized father to have limited phone contact with the children. On January 13, 2014, 14 days after the first scheduled pretrial hearing and 10 days before the rescheduled second pretrial hearing, father absconded from the halfway house, resulting in his termination from the chemical dependency program and the issuance of a warrant for his arrest. Because father did not appear for the second pretrial hearing, the district court revoked its grant of permission for father to contact the children by phone.

Father failed to appear at the termination of parental rights (TPR) trial. The district court terminated father's parental rights on five statutory grounds, including the father's abandonment of the children, his substantial, continuous or repeated refusal or neglect to comply with the duties of the parent and child relationship, his palpable unfitness to parent, his failure to correct the conditions leading to the children's out-of-home placement, and his neglect of the children who were in foster care. *See* Minn. Stat. § 260C.301, subd. 1(b) (1), (2), (4), (5), (8) (2012). In doing so, the district court found that the county made reasonable efforts to reunite the family. In this appeal, father challenges the determination that the county made reasonable efforts to reunify the family.

**D E C I S I O N**

In TPR proceedings, the district court is required to make findings of fact addressing the adequacy of the efforts made to reunite the family, or to find that such efforts would be futile. *In re Children of T.A.A.*, 702 N.W.2d 703, 709 (Minn. 2005); *see* Minn. Stat. §§ 260.012; 260C.301, subd. 8(1) (2012). This district court found that

> [the county] has made reasonable efforts to correct the conditions leading to the children's out-of-home placement. These efforts included multiple chemical dependency treatment placements, coordination of visitation opportunities, offers to assist with transportation and supervision costs, involving father in developing a case plan and involving father in concurrency planning at the Family Group Decision-Making. Father failed to make use of the services and resources that were made available.

Appellate courts review a district court's findings of fact to determine whether they are "clearly erroneous." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 660 (Minn. 2008). A finding is clearly erroneous if "it is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* at 660−61 (quotation omitted). Appellate courts "closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing[,]" *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008), but do not reverse for harmless error, *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 98 (Minn. App. 2008).

Here, the "main focus" of father's case plan was treatment of his chemical dependency. While multiple chemical dependency treatment programs were provided to father, he had multiples relapses and twice absconded from halfway houses, causing his termination from the programs. Father does not explain why his chemical dependency

5

treatment programs, followed by stays in halfway houses, were inadequate services or why he was unsuccessful in his treatment. Father's failure to satisfy this "main focus" of his case plan is inconsistent with the goal of the plan, which was to unite father with his children and avoid termination of his parental rights. *See In re Child of Simon*, 662 N.W.2d 155, 163 (Minn. App. 2003) (stating that a parent's "failure to satisfy key elements of the court-ordered case plan provides ample evidence of [the parent's] lack of compliance with the duties and responsibilities of the parent-child relationship"); *see also In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 666 (Minn. App. 2012) (applying *Simon*).

After father completed his first inpatient chemical dependency treatment, the county tried to contact him to schedule visitation but could not do so. The district court attributed the lack of communication, as well as the lack of other prerequisites for visitation, on father, stating that father

> never sought help from [the county] in obtaining financial assistance for the visits or for a waiver of the fees for the visit[s] at the visitation center; he did not contact [the county] for help getting a state identification card for work; he did not contact [the county] for assistance with gas or transportation assistance to get to the visits.

This finding is consistent with the testimony of the child protection worker. While the record suggests that the GAL may have been aware of father's lack of an identity card, the GAL referred father to the halfway house where he was then living. The GAL also testified that providing services to father was not her job but the job of social services.

Because father did not appear at trial, the testimony on these points is uncontradicted. Thus, the record shows that the county provided father with multiple chemical dependency treatment programs, directed father to someone who could help procure an identity card, and tried to help set up visitation. The record also shows that the county was prepared to help with transportation, finances, and any difficulties with his phone. The record further shows that notwithstanding the county's expressed willingness to provide assistance to father, he did not follow-up in obtaining that assistance. Moreover, despite the order that he maintain contact with the county, he did not do so, and the county could not maintain contact with him due to his absconding from halfway houses and programs, and his failure to respond to phone and text messages. The ultimate result of father's failure to maintain contact with the county was that father compromised the county's ability to identify and provide the assistance he needed.

**1. Filing of case plans:** Father notes that "case plans were never filed" but fails to specifically assert any prejudicial error arising from that fact. Contrary to father's argument, the failure to file a case plan is not fatal to the termination of his parental rights and does not show that the services provided were inadequate. In *In re Welfare of R.M.M.*, the supreme court noted that a county's "failure to construct the required written plan" and give it to mother was the result of mother's failure to cooperate with the county, and declined to reverse the otherwise-supported termination of mother's parental rights, stating that "while such a written plan is required in every case, on the facts of this case the absence of such a plan does not warrant reversal." 316 N.W.2d 538, 542 (Minn. 1982); *see In re Welfare of J.J.L.B.*, 394 N.W.2d 858, 863 (Minn. App. 1986) (refusing to

7

reverse a termination of parental rights for a county's failure to give a parent a case plan until almost two years after the children were put in foster care), *review denied* (Minn. Dec. 17, 1986). If the failure to "construct" a plan is not necessarily fatal to a termination of parental rights, reversal is not required here, when a case plan for father was constructed with his assistance.

**2. Treatment:** Father observes that his chemical dependency treatment was set up through his criminal probation without input from social services. Father does not identify why this is problematic. At trial, the child protection worker testified that it was a "common practice" that either probation or social services would supervise a parent's participation in chemical dependency treatment but not both. As explained by the child protection worker, it would not be "helpful" for father to have "additional treatment through Family Services." We therefore reject any argument that the chemical dependency services offered father were inadequate because they were arranged through his probation rather than family services.

**3. Visits with children:** Father argues that visits with the children initially were not set up for him and that when they were ultimately set up, he was not given the necessary assistance for traveling to, and paying for, the visits. He also complained that the county did not witness any of his visits with the children. As noted above, however, father could not be regularly contacted by the county, and did not contact the county to request the assistance he is asserting that he did not get. Further, the district court's order of January 2013, as well as father's discussion with the child protection worker in March 2013, both conveyed to father that his access to the children would depend, in part, on his

progress in a chemical dependency treatment program. Despite being informed of this condition, father failed to comply with his chemical dependency treatment programs by suffering multiple relapses and absconding from halfway houses without notifying social services where he could be reached. Father has not shown how the visitation services available to him were inadequate.

**4. Child protection worker:** Father suggests that the child protection worker lacked sufficient contact with father, and sufficient information about the visits he had with the children, for the district court to accept her testimony regarding the adequacy of the services provided to father. The district court, however, stated that it "finds the testimony of [the child protection worker and certain others] . . . to be credible and compelling." Appellate courts defer to district court credibility determinations. *See In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996) (noting that "a district court is in a superior position to assess the credibility of witnesses" (citing *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990)); *In re Welfare of Child of J.L.L.*, 801 N.W.2d 405, 413 (Minn. App. 2011) (stating that "[appellate courts] defer to the district court's determinations of witness credibility and the weight given to the evidence" (citing *L.A.F.*)), *review denied* (Minn. Jul. 28, 2011). Thus, father is asking this court to exceed its role by assessing witness credibility. We decline to do so.

**5. Incarceration:** Father asserts that the county had no contact with him while he was incarcerated and that the county cited his incarceration as a reason not to provide assistance to him. Father does not identify, nor is it otherwise clear, what additional services the county could have offered father while he was incarcerated. The "main

9

focus" of father's case plan was his chemical dependency treatment, and he was provided multiple chemical dependency programs through his probation from which he was discharged due to his non-compliance.

While incarceration is not an independently sufficient basis for terminating parental rights, incarceration can be combined with other factors to allow termination. *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004); *In re Staat*, 287 Minn. 501, 506, 178 N.W.2d 709, 713 (1970). Here, the district court did not terminate father's parental rights based solely on his incarceration. It did, however, note that father's repeated incarcerations, combined with other factors, justified termination:

> 85. Father has spent the majority of the last two (2) years in treatment, in jail or on the run. There is no reason to believe that this pattern of conduct will change.
>
> 86. It is not in the best interests of the children to have a father who is utterly disconnected from them.
>
> 87. It is in the children's best interests to have a permanent stable home with parents who can provide safety, continuity and care for their well-being.
>
> 88. [The county] has put resources at father's disposal to address the multiple issues that led to the initial child protection matter. Father has simply failed to take advantage of the services and resources offered.

Thus, the district court, in terminating father's parental rights, neither based its termination solely on father's incarceration nor focused on any aspect of father's incarceration that could have been mitigated by the provision of additional services while father was incarcerated.

Father has not shown that the finding that the county provided reasonable efforts is either manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole. *T.R.*, 750 N.W.2d at 660-61.

**Affirmed.**