**In the Matter of the Welfare of R. M. M. III.**

No. 52081.

Supreme Court of Minnesota.

March 5, 1982.

Lawton & Lawton and Robert J. Lawton, St. Paul, for appellant.

Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, Michael G. Finnegan, Guardian ad Litem, St. Paul, for respondent.

WAHL, Justice.

This is an appeal by E. A. M. from an order of the Ramsey County District Court, Juvenile Court Division, terminating her parental rights to her son, R. M. M. III. Because E. A. M. is an Indian and R. M. M. III is an Indian child, the Indian Child Welfare Act of 1978, 25 U.S.C. §§ 1901–1963 (Supp.1981), applies to this case. That act requires the state to notify an Indian child's tribe of any proceedings involving the custody of that child. 25 U.S.C. § 1912(a) (Supp.1981). Since E. A. M. is a member of the Fon Du Lac Band of the Minnesota Chippewa Tribe, the Chippewa Tribe was informed of these proceedings by certified mail on October 5, 1979. When the Tribe did not elect to exercise its jurisdiction, the Ramsey County District Court proceeded on the matter.

The Indian Child Welfare Act of 1978 provides that parental rights to an Indian child will be terminated only when it is established beyond a reasonable doubt that continued custody by the parent is "likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f) (Supp.1981). E. A. M. challenges the sufficiency of the evidence to meet this stringent standard of proof. We affirm the trial court.

E. A. M., at 31 years of age, has a long and sad history of chemical abuse and instability. She has been institutionalized numerous times, including 10 to 15 stays at Hastings State Hospital, and has attempted suicide several times. In 1970, she tried to set fire to herself after she had been raped. On another occasion she tried to hang herself, and twice she took overdoses of drugs. As recently as July 13, 1980, she tried to jump from a bridge in downtown St. Paul.

E. A. M. voluntarily terminated her parental rights to her first three children. R. M. M. III, her fourth child, was born on April 30, 1977, after E. A. M. had been living with the child's father, R. M., for about a year. After the first 2 years of the child's life, the family situation seemed relatively stable. However, in 1979, the Ramsey County Human Services Department learned that E. A. M. was going off and leaving R. M. M. III for periods of time and that the father felt he was not able to cope with the child during those absences.

In February 1979, R. M. placed R. M. M. III in a shelter during one of E. A. M.'s absences. Although E. A. M. took her son back upon her return, she asked to have him put in a shelter home about a month later. At that time she said that she could not provide for his care because of conflicts in her relationship with R. M., that she did not want the responsibility of parenting, and that she wanted to terminate her parental rights.

R. M. M. III was placed in shelter care on May 1, 1979, and, with the exception of a brief time in August 1979, has remained under the care of Ramsey County since that date. In August 1979, E. A. M. took R. M. M. III to live with her; however, she dropped him off at a nursery 2 weeks later and did not return for him. Ramsey County then filed a petition to have R. M. M. III adjudicated dependent and neglected and placed in the legal custody of the Human Services Department. The petition for custody was granted on November 29, 1979, after a hearing at which both E. A. M. and R. M. admitted that they had abandoned R. M. M. III and that he was without proper care because of their emotional and mental disabilities and psychiatric problems.

E. A. M. expressed little interest in R. M. M. III while he was in foster care. She visited him in January 1980 but did not request another visit until June of that year. Meanwhile, on February 12, 1980, she again told her social worker that she wanted to terminate her parental rights to R. M. M. III. On May 7, 1980, the County filed a Petition for Termination of Parental Rights, which E. A. M. then denied.

Dr. John Scanlan, the psychiatrist who had treated E. A. M. when she was hospitalized after her most recent suicide attempt, testified at the termination hearing, on October 13, 1980, that E. A. M. suffers from alcohol abuse, antisocial personality, and situational depression. He believes that E. A. M.'s ability to parent is severely impaired and that R. M. M. III's emotional and physical health will be jeopardized if he is placed with her. Scanlen does not anticipate a significant change in E. A. M.'s condition in the foreseeable future and believes that treatment for chemical dependency will not, by itself, cure her problems.

Two of E. A. M.'s social workers also believe that her condition is prolonged and indeterminate. Lynn Beutel, who worked with E. A. M. around the time of R. M. M. III's birth and again in the early months of 1979, stated that there was no indication of abuse when R. M. M. III was in his mother's care but that E. A. M. is ambivalent about her parental role. Douglas Johnson, who began working with E. A. M. in March 1979, indicated that she relies on chemicals whenever her life becomes stressful and that this adds to her dysfunction, which he defines as her inability to make good decisions for herself and to make plans for more than a few days at a time.

Both Johnson and Michael G. Finnegan, R. M. M. III's guardian *ad litem*, believe that R. M. M. III needs long-term attachments, security and stability which E. A. M. cannot provide because of her instability, relationship conflicts, use of alcohol and prolonged absences. Finnegan stated at oral argument before this court that he has encouraged E. A. M. to go to Genesis 2, a program where she would learn parenting skills. She could not go there, however, because Genesis 2 would not take her until she did something about her chemical dependency, and she refused to enter treatment.

E. A. M. testified at length on the subject of her use of chemicals. She stated that she would not want her son back while she was using chemicals and that she would be willing to go through any treatment program that is necessary. However, when asked why she did not go into treatment in the summer of 1980, as she had indicated she would, E. A. M. said she had changed her mind because she "wanted to drink some more." She also recalled a conversation in which Johnson urged her to go into treatment. When Johnson indicated that she would not get her son back because she had not gone into treatment, E. A. M. said she didn't "like to be pushed into anything because it has to look good for somebody in the courtroom." At another point in the proceedings, E. A. M. was asked if she would voluntarily enroll in a treatment program the following week. She responded, "Hopefully I will, yes."

The issue presented on appeal is whether the evidence is sufficient beyond a reasonable doubt to support the findings of the trial court and to uphold its decision terminating E. A. M.'s parental rights to R. M. M. III.

This case is governed by Minnesota's termination statute, which provides that:

> The juvenile court may, upon petition, terminate all rights of a parent to a child * * * (b) if it finds that one or more of the following conditions exist:
>
> (2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or
>
> *     *     *     *     *     *.
>
> (4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or
>
> (5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or
>
> *     *     *     *     *     *
>
> (7) That the child is neglected and in foster care.

Minn.Stat. § 260.221 (1978).

■ In a termination case, the trial court must make clear and specific findings which

conform to the statutory requirements. *Zerby v. Brown*, 280 Minn. 514, 160 N.W.2d 255 (1968). In this case, the trial court specifically found that E. A. M., the mother, and R. M., the father, had substantially, continuously, and repeatedly refused to provide parental care and protection within the meaning of subdivision (2); that E. A. M. is unfit to be a party to the child-parent relationship because of her intoxication, chemical abuse and manifested suicidal conduct, such conduct being likely to be permanent and detrimental to the physical and mental health and morals of the child within the meaning of subdivision (4); that the Human Services Department made reasonable efforts to correct conditions leading to the adjudication of dependency and neglect, but those efforts have failed, within the meaning of subdivision (5); and that R. M. M. III is a child who is neglected and in foster care within the meaning of subdivision (7).

█ Under the federal Indian Child Welfare Act, no termination of parental rights to an Indian child may be ordered "in the absence of a determination *supported beyond a reasonable doubt,* including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. 1912(f) (emphasis added). The trial court found that the county had met this stringent standard of proof.

In the 2½ years since R. M. M. III was first placed in foster care, E. A. M.'s life has been out of control. She has attempted suicide twice in that period, has been sober for no more than a few weeks at a time, and has been unable to stabilize her relationship with R. M. M. III's father. While she has occasionally recognized her need for chemical dependency treatment, she has not made a commitment to seek such help. At times when she has been hospitalized, she has left the facilities and not returned. Throughout this period and for several years previous, a variety of social services and treatment options has been available to her; but she has not made use of them.

Also in this 2½ year period, E. A. M.'s conduct toward her son has been erratic and inconsistent. She left him in a nursery and made no arrangements for his care, left the state for several weeks without regard for his welfare or whereabouts, and later admitted abandoning him. She has visited him only sporadically and infrequently and has on several occasions wanted to terminate her parental rights.

█ Both Scanlan and Johnson testified at trial that E. A. M.'s condition is a serious threat to R. M. M. III's emotional and physical health. This testimony fulfills the requirement of both the Indian Child Welfare Act and subdivision 4 of the termination statute.

█ The court need find the existence of only one of the statutory conditions in order to terminate parental rights. In this case, however, in addition to meeting the conditions of subdivision (4), E. A. M.'s behavior fulfills the conditions of subdivisions (2), (5) and (7). E. A. M. did not dispute R. M.'s testimony that she would leave the child with him and not return for days at a time. This conduct, combined with the abandonment at the nursery school and her requests that Ramsey County take custody, fulfill subdivision (2): She has "refused to give the child necessary parental care and protection."

Johnson met with E. A. M. weekly between August and October of 1980. E. A. M. does not dispute Johnson's testimony that he tried during this time to help her find some stability and direction for her life. Since she has been unable or unwilling to respond to this assistance, the trial court rightfully found that reasonable efforts had "failed to correct the conditions leading to the determination" of neglect within the meaning of subdivision 5. Subdivision 7, which requires that the child be neglected and in foster care, is also satisfied in this case. R. M. M. III is clearly in foster care because of E. A. M.'s inability to care for him.

█ In addition to requiring that the trial court make clear and specific findings which conform to the statutory require-

ments, we further require that the evidence relating to termination address conditions which exist at the time of the hearing and that it appear that "the present conditions of neglect will continue for a prolonged, indeterminate period * * *." *In re the Welfare of Chosa*, 290 N.W.2d 766 (Minn. 1980).

Both Beutel and Johnson testified that E. A. M.'s condition is prolonged and indeterminate. Scanlan testified that he did not see the possibility of change in the foreseeable future, and Finnegan stated at oral argument that E. A. M. is not going to change. E. A. M.'s own behavior compels such conclusions. She has not undertaken a serious effort to treat her chemical dependency and has repeatedly broken commitments to go into treatment. She has been unable to resolve her relationship with R. M. and has been ambivalent in her attitude toward parenting her son. Even at trial, when pressed to make a commitment to go into treatment, she responded that she "hopefully" would go. Unfortunately, the crucial factor in this case is that there is no evidence to support E. A. M.'s hope that her behavior will change.

In *Chosa*, we vacated an order terminating the parental rights of a young Indian mother because the record suggested that, with the assistance of child-rearing services, she would be able to demonstrate ability to care for her child. Unfortunately, the record in this case suggests no such solution. Whereas Chosa was 18 years old at the time of the hearing on termination of her rights to her first child, E. A. M. is now 31 and has voluntarily terminated her rights to three older children. Moreover, Chosa's behavior had shown some improvement before the hearing, and Chosa indicated at trial her willingness to try a new parenting program. E. A. M., on the other hand, has shown no improvement and has taken no steps toward working out the problems which threaten R. M. M. III's welfare.

■ E. A. M. argues that Ramsey County failed to comply with a statutory requirement to prepare a written case plan within 30 days after placing the child in foster care. Minn.Stat. § 257.071, subd. 1 (1980).

The written plan is to describe specific actions which the parent can take to eliminate or correct the problems which led to the child's placement. Minn.Stat. § 257.071, subd. 1(2). Despite the fact that E. A. M. had been provided with no such plan, the trial court found that case-planning efforts had been an ongoing concern of the county and that E. A. M.'s own lack of cooperation was responsible for the county's failure to construct the required written plan. We agree with the trial court's conclusion and find that, while such a written plan is required in every case, on the facts of this case the absence of such a plan does not warrant reversal.

Our decision is not an indictment of E. A. M. Rather it is a recognition that this woman, who has herself been victimized in so many ways and for so long, is simply unable to care for her child even though she loves him. Her inability to do so threatens the mental and physical health of her son. We must affirm the decision of the court below to terminate her parental rights.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.