**In the Matter of the WELFARE OF P.J.K. and J.L.K.**

**No. C6–83–2026.**

Court of Appeals of Minnesota.

Oct. 2, 1984.

Review Granted Jan. 9, 1985.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by the father from an order terminating his parental rights.

The trial court terminated parental rights based on findings that appellant was unfit for the parent-child relationship, and had failed to correct conditions leading to a dependency determination, and the finding that the children were neglected and in foster care, Minn.Stat. § 260.221(b)(4), (5), and (7). Appellant challenges the sufficiency of the evidence to support these findings, and raises issues regarding the parental rights of mentally handicapped parents. We reverse.

## FACTS

Appellant and his wife were divorced in September, 1975, and his wife was granted custody of their two sons, who were 8 and 9 years old, at the time of the termination hearing.

Appellant is a mildly retarded person with a full-scale IQ of 68. His ex-wife is also mentally handicapped. The children are developmentally delayed children, with special needs. Appellant exercised visitation rights in 1975 and early 1976, but then moved to Duluth in May, 1977, not returning to Minneapolis until June, 1978. During that period there was no visitation.

Hennepin County's Child Protection Division became involved with appellant's ex-wife and the children in February of 1976. Although housekeeping services were provided to her, she was unable to maintain minimal housekeeping standards, and deplorable living conditions developed in the home. The County filed a dependency and neglect petition on August 31, 1978, following the removal of the children from the home due to the living conditions in the home.

The petition alleged that appellant had not had any contact with the children for

Lane Ayres, Asst. Public Defender, Minneapolis, for guardian ad litem.

John Peter Alexis, Minneapolis, for father.

Thomas L. Johnson, Hennepin County Atty., William Hershleder, Asst. County Atty., Minneapolis, for Hennepin County Bureau of Social Services.

Jane A. Kammerman, Minneapolis, for mother.

the past two years, but was currently attempting to arrange a visitation plan. It alleged that he had not provided financial support or gifts, and had proposed no plan for care and custody of the children.

Prior to the hearing on the dependency and neglect petition, appellant sought custody of the children in Family Court. This custody motion was referred to the Juvenile Court for determination in the dependency and neglect proceedings. The court ordered a custody study prepared, which recommended that temporary custody remain in the Hennepin County Welfare Department.

At the dependency and neglect hearing, the court ordered legal custody transferred to Hennepin County Social Services for a six-month period, for placement in foster homes. The court further ordered compliance by the parents with individual stipulated rehabilitation plans.

Appellant's plan required individual counseling and attendance at parenting classes, both at Southside Services, continued contact with Child Protective Services, and permitted reasonable, supervised visitation with the children.

Appellant initially complied with the stipulated plan. He obtained employment and found a suitable place to live, receiving help and counseling from Southside Services. He began parenting classes. In August of 1979, appellant's visitation was curtailed following his expressions of hostility and verbal abuse towards the foster family.

When visitation resumed, in December, 1979, it was supervised by Southside Services, which also provided transportation to the foster home. Regular biweekly visitation continued through December, 1980, when Southside Services asked to be relieved of supervision. Appellant then objected to the supervision of the Department of Domestic Relations and refused to continue visitation until he could do so unsupervised. He visited the children only twice between December, 1980, and the filing of the petition for termination of parental rights in February, 1983.

Appellant began parenting counseling at a Community Health Care Center, which sessions were discontinued by the counselor, and at the University of Minnesota, where he attended group counseling sessions. He began parenting classes at the University but quit because he did not feel it was beneficial. He failed to maintain contact with Child Protection Services after June of 1981, moving to Eveleth in July of 1981 without advising the assigned social worker.

In September, 1980, the children were transferred to a new foster home. In December, 1980, following a review hearing, the court ordered a psychological evaluation of appellant's relationship with his children, and a personal evaluation to be submitted by his counselor at the University, Dr. Chang.

Dr. Chang recommended supervised visitation, of increasing frequency and duration. He also recommended parental counseling, individual psychotherapy, and occupational counseling. Dr. Lund, the child psychologist, observed appellant's interaction with the children, and concluded that his visits were highly stressful to them, and that visitation should be of short duration and supervised. She recommended that plans be made for long-term foster placement or adoption, stating that appellant would not benefit from counseling or psychotherapy.

In February of 1983, a petition for the termination of appellant's parental rights was filed. This followed the signing of a consent to termination of his ex-wife's parental rights, which was conditioned on termination of appellant's rights. The grounds stated in the petition were:

1) The mother's consent;

2) Children neglected and in foster care (Minn.Stat. § 260.221(b)(7));

3) Previous neglect or dependency uncorrected despite assistance (§ 260.-221(b)(5));

4) Parents "palpably unfit" (§ 260.-221(b)(4)).

## ISSUE

Was there clear and convincing evidence to support the trial court's findings that the necessary conditions existed for termination of appellant's parental rights under Minn.Stat. § 260.221(b)(4), (5), and (7)?

## ANALYSIS

■ In a termination proceeding, the petitioner has the burden of proving a statutory ground for termination of parental rights by clear and convincing evidence. *Matter of Welfare of Rosenbloom*, 266 N.W.2d 888 (Minn.1978). This burden of proof is subject to the presumption that a natural parent is a fit and suitable person to be entrusted with the care of his child. *In re Dependency of Klugman*, 256 Minn. 113, 97 N.W.2d 425 (1959). The "clearly erroneous" standard is applied to the trial court's findings, but not as in the ordinary civil case:

"* * * [T]his court will continue to exercise great caution in termination proceedings, finding such action proper only when the evidence clearly mandates such a result in accordance with statutory grounds."

*Matter of Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978).

■ This requires that a reviewing court, "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *Matter of Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980).

The statutory grounds cited for termination of appellant's parental rights were the following:

"(4) That a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child; or

(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court,

have failed to correct the conditions leading to the determination; or

\* \* \* \* \* \*

(7) That the child is neglected and in foster care."

Minn.Stat. § 260.221(b)(4), (5), (7) (1982).

Appellant urges this court to set separate standards for termination of parental rights of the mentally handicapped, in particular those, like appellant, who are non-custodial parents. We decline to do so.

■ Appellant's mental retardation is a primary factor in the proposed termination of his parental rights, but one which cannot be separately considered. Minnesota statutes do not mention mental condition of a parent except as a grounds for an adjudication of dependency, if lack of proper care results. Minn.Stat. § 260.015(6)(d).

■ The Supreme Court in *Matter of Welfare of Kidd*, 261 N.W.2d 833 (Minn. 1978), held that mental *illness* was not, of itself, "other conduct" which under the statute then in effect, Minn.Stat. § 260.-221(b)(4) (1976), would support termination of parental rights. It held that demonstrated behavior stemming from a mental condition projected to be permanent, may be such "other conduct." The current statute requires "a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship." Minn.Stat. § 260.-221(b)(4) (1982). Thus, mental retardation, while a permanent condition, must be manifested in specific conduct shown to be "permanently detrimental" to the child. Termination proceedings for the mentally handicapped are governed by the statutory standards set forth in Minn.Stat. § 260.221.

### a. *"Palpably unfit"*

*Matter of Welfare of Kidd*, 261 N.W.2d 833 (Minn.1978), although concerned with mental illness rather than retardation, indicates that retardation, as a permanent mental condition, would constitute a "specific condition" making a parent unfit if there is

"demonstrated behavior," 261 N.W.2d at 836, which is detrimental to the child.

The County's evidence that appellant is unfit for the non-custodial parental role is limited to the psychologist's observation of his interaction with the children, social worker complaints about appellant in general, and the foster parents' observations of the children's behavior following his visits. The psychologist's evaluation can be summarized by the following:

"[Appellant] is also retarded. He does not understand basic interactional or parenting principles. His expectations are excessive. Consequently, his visits with the children are frustrating for them. Therefore, behavioral disturbance after these visits would be expected. [Appellant] seems genuinely to care about his children, but to be unable to deal appropriately with their special needs."

The foster mother reported that the children exhibited emotional problems, "including enuresis, soiling, nailbiting, and behavior problems" after appellant's visits.

■ The frustration experienced by the children as a result of these visits, even though physically manifested, was not a permanent detriment, Minn.Stat. § 260.-221(b)(4), of such gravity and weight as to support termination of parental rights. *Cf., Matter of R.M.M.*, 316 N.W.2d 538 (Minn.1982) (erratic and inconsistent behavior of parent, including abandonment of child and suicide attempts, supported finding of parental unfitness).

■ Appellant's anger towards the social services "system" and his inability, due to his mental handicap, to assume a full custodial role, are not factors to be considered in determining whether he was "palpably unfit" for the parent-child relationship, as required by Minn.Stat. § 260.-221(b)(4). Appellant's attitude towards social services professionals is not conduct or conditions "directly relating to the parent and child relationship." Minn.Stat. § 260.-221(b)(4) (1982). Nor is appellant required to show an ability to assume full custody in order to retain a relationship with his chil-

dren. *See, Petition of Linehan*, 280 N.W.2d 29, 33 (Minn.1979).

*b. Failure to correct conditions leading to dependency*

The conditions leading to the dependency petition and order were conditions existing in the home of the children's mother. The petition did allege, however, that appellant had had no contact with the children (although he was then attempting to arrange visitation), and had provided no plan for care and custody, and no financial support. Appellant has since corrected his own failure to contact his children or attempt visitation. He petitioned for custody in Family Court. Whether it was his responsibility to propose a plan for custody, or the County's, is unclear; however, his failure to correct this deficiency is largely attributable to the County's conclusion that he is unsuitable for custody.

Appellant did fail in some respects to follow through on the conditions imposed on him by the stipulated plan. Although he began parenting classes and counseling, he discontinued both, apparently due to personal frustration. There was evidence, however, tending to show a lack of suitable parenting programs for mentally handicapped fathers. Similarly, his visitation, which was regular during supervision by Southside Services, became sporadic when this supervision ceased, and appellant insisted on unsupervised visitation.

■ The county did not show by clear and convincing evidence that appellant failed to substantially comply with the conditions of the rehabilitative plan; moreover, there was no showing that the plan, which included no custody provision, could correct the conditions leading to the determination of dependency. Minn.Stat. § 260.221(b)(5).

*c. "Neglected and in foster care"*

Parental rights may be terminated on the grounds that the child is "neglected and in foster care." Minn.Stat. § 260.221(b)(7) (1982). A child is defined to be "neglected and in foster care,"

"(a) Who has been placed in foster care by court order; and

(b) Whose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

(c) Whose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, *or have willfully failed to meet reasonable expectations with regard to visiting the child* or providing financial support for the child."

Minn.Stat. § 260.015, subd. 18 (1982) (emphasis added).

 There is no dispute over the first two requirements, either the children's placement in a foster home, or appellant's inability to provide full-time care and custody. The county, however, has not shown by clear and convincing evidence the third requirement of the statute. It has not shown either that parenting counseling and classes suitable for mentally handicapped fathers are available, or that supervision for visitation is available to replace that provided by Southside Services. Furthermore, there is no showing that appellant, in view of the difficulties in arranging visitation, has failed "to meet reasonable expectations with regard to visiting the child[ren]." Minn.Stat. § 260.015 subd. 18 (1982).

### d. Summary

 Since the statute has been amended to include the "best interest of the child" standard in Minn.Stat. § 260.155, subd. 7(2) (1978), the Supreme Court has held that the best interests of the child[ren], as well as the interests of parents, are an element for consideration in termination of parental rights proceedings. *Matter of Welfare of HGB*, 306 N.W.2d 821, 827 (Minn.1981). The stability of a home environment is a factor which must be given high priority in determining the best interests of the child. *Matter of Welfare of K.T.*, 327 N.W.2d 13, 18 (Minn.

1982). The court has considered prospects for adoption in trying to determine the best interests of the child. *See, Matter of Welfare of Kidd*, 261 N.W.2d 833, 836 (Minn. 1978). In *In re Welfare of Forrest*, 246 N.W.2d 854 (Minn.1976), the court indicated that the best interests of the child might require termination of parental rights of an unfit parent so that foster parents might adopt the child. 246 N.W.2d at 857.

Here, there is no evidence that adoption of the children is an immediate possibility. It is not clear how the children's best interests would be served by termination of appellant's parental rights. The petition for termination followed closely on the voluntary consent to termination by the children's mother, conditional on termination of appellant's rights also. Unless there are real prospects for an adoption of the children, the mother's consent is irrelevant to whether appellant's rights should be terminated.

It is clear that the children have special needs which could only be fully met by constant supervision and special services. We do not see, how these special needs, which can only be satisfied through a full-time custodian, are in conflict with appellant's parental right to visitation.

Considering the evidence of serious physical and emotional effects on the children from appellant's visits, we reiterate the trial court's authority to set conditions on appellant's exercise of visitation, such as requiring that visitation be supervised, and that appellant attend parenting classes or counseling sessions, as required by the May, 1979 order.

### DECISION

Statutory grounds for termination of parental rights were not shown by clear and convincing evidence.

Reversed.