In the Matter of the WELFARE OF H.K., Minor Child.

No. C8–89–1800.

Court of Appeals of Minnesota.

May 22, 1990.

Review Denied July 6, 1990.

John L. Kallestad, Willmar, for appellant mother.

Michael Q. Lynch, Kandiyohi County Atty., Willmar, for respondent Kandiyohi County.

Gregory R. Anderson, Willmar, for respondent father.

Michael D. Thalberg, Spicer, for respondent child.

Considered and decided by CRIPPEN, P.J., and GARDEBRING and SCHULTZ,* JJ.

## OPINION

GARDEBRING, Judge.

Following a court hearing, appellant mother's parental rights were terminated. Appellant did not appear at the hearing. On appeal, she claims the trial court erred by terminating her parental rights. We disagree and affirm.

## FACTS

H.K. was born to appellant and A.J. on November 5, 1983. The two never married. On September 26, 1986, appellant married her current husband, L.S., and they had a child, M.S.

In May 1987 respondent Kandiyohi County filed a dependency petition, later amended in July 1987, alleging H.K. to be in need of protective services. The petition claimed the family environment was one of chaos and violence. Appellant was chemically dependent and drank excessively while caring for H.K., but minimized or denied the problem when confronted by social services personnel. There were reports that H.K. was often dirty, and made remarks about being hungry and thirsty. Moreover, the county received several reports of domestic violence. For these reasons the court ordered H.K. placed in foster care.

Three months later, the county proposed a placement plan that contained the following objectives for appellant: maintain a stable, clean living environment for six months; complete a chemical dependency

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

evaluation and follow through with its recommendations; visit and maintain contact with H.K.; and cooperate with social services so that progress could be monitored. Later an addendum to the plan required appellant to complete a program for battered women. Appellant's case manager testified appellant understood what tasks were assigned her and agreed to do them.

On April 13, 1988, the trial court concluded H.K. was a dependent child under Minn. Stat. § 260.015, subd. 6(d) (1986). Accordingly, care, custody and control of H.K. were transferred to the county. The court found that appellant's chemical dependency problem needed to be resolved before a parent-child relationship could develop, but that appellant was not open to chemical dependency treatment. Further, appellant's frequent moves had not established a stable family environment. Moreover, the trial court found appellant's emotional and mental abilities made impossible H.K.'s proper care. Finally, the trial court found that appellant failed to cooperate with county services. Due to this situation, the trial court ordered appellant to complete a chemical dependency evaluation, a program for battered women, and parenting skills classes. She was granted visitation of H.K. twice monthly.

On December 14, 1988, the county petitioned to terminate appellant's parental rights and five months later a termination hearing was held. Evidence at the hearing shows appellant completed the chemical dependency evaluation. Pursuant to its recommendation, she started treatment at the Moose Lake Regional Treatment Center in October 1988, but left before completing the program. Evidence also indicates appellant visited H.K. six times between September 1987 and February 1988. However, after February her visitations stopped and were never resumed. Further, appellant moved at least six times between July 1987 and January 1989, all within St. Cloud, but she never stayed in one place for longer than six months as her case plan required. She also failed to finish the parenting classes.

H.K. was examined by a child psychologist, Dr. William Friedrich, whose deposition was before the court. He met with H.K. nine times between May 1987 and December 1987, and then reevaluated H.K. under court order in March 1989. From his March examination, Dr. Friedrich concluded H.K. suffered from three psychological disorders: 1) oppositional disorder, 2) post-traumatic stress disorder, and 3) depression. Further, he concluded that the parental rights of appellant should be terminated. His conclusion was predicated on his knowledge of appellant's relationship with H.K., though he never examined appellant, and his belief that appellant could not provide the consistent, positive, and mature parenting that H.K. needed.

In its September 1989, findings of fact, conclusions of law, and order for judgment, the trial court ordered appellant's parental rights be terminated, based on three separate statutory grounds. The court found: (1) that H.K. was abandoned, Minn.Stat. § 260.221, subd. 1(b)(1) (1988); (2) that appellant neglected to comply with the duties of the parent and child relationship, Minn. Stat. § 260.221, subd. 1(b)(2) (1988); and (3) that appellant was palpably unfit as a parent, Minn.Stat. § 260.221, subd. 1(b)(4) (1988). The court found further that appellant failed to correct conditions leading to the dependency determination, Minn.Stat. § 260.221, subd. 1(b)(5) (1988). In addition, the court concluded the statutory conditions leading to the dependency determination would not be corrected within the reasonably foreseeable future. Finally, the court concluded that the best interests of H.K. would be served by termination of appellant's parental rights.

Appellant argues the trial court's finding that the county made reasonable efforts to correct the conditions of neglect is not supported by clear and convincing evidence. Further, she argues the present conditions of neglect will not necessarily continue for a prolonged, indeterminate period of time.

ISSUE

Did the trial court err by terminating appellant's parental rights?

## ANALYSIS

Parental rights may be terminated pursuant to Minn.Stat. § 260.221 (1988). The trial court need find the existence of only one of the statutory conditions to support termination. *In re Welfare of R.M.M.*, 316 N.W.2d 538, 541 (Minn.1982). The court's decision to terminate parental rights must be supported by clear and specific findings. *Id.* at 540–41. The county has the burden of proving its allegations by clear and convincing evidence. *In re Welfare of Rosenbloom*, 266 N.W.2d 888, 889–90 (Minn.1978). While some deference is accorded the trial court's findings, appellate courts "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn.1980) (quoting *In re Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978)).

As a preliminary matter, we note that two of the statutory conditions upon which the trial court based termination of appellant's parental rights require that the county make reasonable efforts to correct the conditions that led to the dependency determination. Minn.Stat. § 260.221, subd. 1(b)(2) and (5). A third statutory condition requires the county make reasonable efforts to facilitate contact. Minn.Stat. § 260.221, subd. 1(b)(1)(ii). Appellant challenges only the trial court's findings as to "reasonable efforts" by the county and the likelihood of correction of the conditions leading to termination. Therefore, we focus in this opinion on those two issues.

Appellant claims the trial court erred in finding the county utilized "reasonable efforts" to correct the conditions leading to the dependency adjudication. We find the argument unpersuasive. Services must go beyond mere matters of form so as to include real, genuine assistance. *In re Welfare of J.A.*, 377 N.W.2d 69, 73 (Minn.App.1985), *pet. for rev. denied* (Minn. Jan. 23, 1986). The county's efforts must assist in alleviating the conditions that gave rise to the dependency adjudication. *In re Welfare of M.A.*, 408 N.W.2d 227, 235–36 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 18, 1987). Whether the county has met its duty of reasonable efforts requires consideration of the length of the time the county was involved and the quality of effort given. *In re Welfare of M.G.*, 407 N.W.2d 118, 122 (Minn.App. 1987).

Here the court's finding of reasonable efforts is supported by substantial evidence. In the first place, the terms of the August 1987 placement and its June 1988 addendum were clear and reasonable, addressing the problems that led to the dependency petition, namely, chemical dependency and physical abuse. Further, the record substantiates the court's finding that the county was willing to provide the necessary arrangements—including costs, child care and transportation—for appellant to complete chemical dependency treatment, a battered women's program and parenting classes. Moreover, transportation and a visitor monitor were provided for appellant to visit H.K. The county provided A.F.D.C. and food stamps. Finally, the county case workers met frequently with appellant, explained the objectives of the case plan and the consequences if appellant failed to meet them, and encouraged her to visit with H.K.

Appellant nevertheless claims the county failed its burden of making reasonable efforts. First, she claims the county failed to inform her that chemical dependency treatment was available in St. Cloud so that she would not have to travel to Moose Lake. This argument lacks merit. Even if such a program exists in St. Cloud, this alone does not undermine the court's finding that reasonable efforts were made. The county paid for the Moose Lake program and promised to provide transportation for H.K. to visit appellant while in treatment, but appellant left before completion of the program and has not pursued additional treatment.

Second, appellant argues that proper therapeutic treatment was not provided for H.K. The lack of adequate treatment, appellant insists, affected H.K.'s recovery from her emotional disturbances and therefore frustrated the family's reunification. This argument is without merit. Dr. Fried-

rich's criticisms of treatment, as presented in his March 1989 deposition, described the conditions as he witnessed them in December 1987, before H.K.'s case was transferred to another psychologist, and therefore his assessment of inadequacy or adequacy of treatment throughout 1988 and 1989 lacks foundation. While H.K. still suffers psychological problems, the record does not indicate that the county failed to provide adequate therapeutic treatment.

Finally, appellant claims the county frustrated her attempts to reunite with H.K. A January 1989 letter from appellant requested visitation with H.K. as soon as possible. In response, the county wrote to appellant denying her request because visitations with H.K.'s natural father had started. Visits by both parents, in the opinion of the social worker, would place excessive stress on H.K. She now argues the county's denial of visitation indicates a lack of reasonable efforts. Given that the January letter was the only contact appellant made during the 15 months before the termination hearing, that it was perhaps a response to the notice of termination proceedings, and that appellant did not contest denial of visitation at the time, we find her claim unpersuasive.

■ Appellant's claim that insufficient evidence supports the conclusion that the present conditions of neglect will continue for a prolonged and indeterminate time also lacks merit. *See In re Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980).

Appellant did not complete the goals outlined in the placement plan. Appellant was to maintain contact with H.K. but no visits occurred between February 1988 and January 1989, when she requested that the visits resume. The court ordered her to attend and finish a program for battered women in the hope of ending the cycle of violence, oppression and abuse she experienced with her husband. She did not complete the program. Further, after completing a chemical dependency evaluation, appellant started an inpatient chemical dependency program in October 1988, but failed to finish it. In addition, she did not, at any time since the dependency hearing,

keep a stable environment by living in one place for more than six months. Finally, she did not finish the required parenting classes. Appellant's unwillingness to complete any of the goals of her placement plan provides clear and convincing evidence that the present conditions of neglect will continue for a prolonged and indeterminate time.

## DECISION

The trial court correctly found the county made reasonable efforts to correct the conditions leading to the determination of dependency. Further, the present conditions of neglect appear that they will continue for a prolonged and indeterminate time. Therefore, the trial court did not err in terminating appellant's parental rights.

Affirmed.

CRIPPEN, Judge, dissenting.

Appellant is entitled to a further evidentiary hearing because (1) the trial court's findings do not support its conclusions for termination of appellant's parental rights and (2) there is a fundamental gap in the evidence needed to terminate the legal basis for appellant's future contacts with her six-year-old daughter.

### 1. Necessary findings

Since initiated in December 1988, the nature of these proceedings has been misstated. Reflecting the evidence and the focus of the parties (except for counsel representing the child, whose observations appear below), the trial court's findings deal exclusively with the question of whether appellant R.S. can provide custodial care for her daughter. As the majority capably reports, there is ample evidence that appellant has been and remains unfit to provide helpful custodial care. There remains, however, another critical consideration. The child is presently receiving custodial care from her father, and the essential consequence of these proceedings is to terminate the right for visitation contacts by the child's mother. The essence of these proceedings is to eliminate the obstacle to a step-parent adoption.

Termination proceedings as a prelude to step-parent adoption have been frequently

considered by the Minnesota Supreme Court, but that court has not had occasion to review the issue since 1979. *See In Re Petition of Linehan*, 280 N.W.2d 29 (Minn. 1979) (affirming refusal of trial court to terminate parental rights of father who evidently had not seen 13 year old son for nearly eight years and who had failed to make child support payments during that same span of time; court reviewed prior decisions on termination of visitation contacts). The language of statutory provisions on termination of parental rights, Minn.Stat. §§ 260.221–260.245 (1988), deal generally with the parent-child relationship and make no special reference to visitation contacts by a noncustodial parent. Such was also the case when *Linehan* was decided.

Nevertheless, *Linehan* and its predecessor decisions make it apparent that the courts address a different issue when dealing with termination of visitation contacts; it is evident that termination of visitation contacts by a noncustodial parent is not to be premised solely on a finding that this parent could not provide adequate custodial care. This analysis of the law is corroborated by a 1978 legislative enactment not discussed in *Linehan*. As a matter of law, a noncustodial parent is to enjoy visitation contact unless the court finds, after a hearing, that "visitation is likely to endanger the child's physical or emotional health or impair the child's emotional development * * *." Minn.Stat. § 518.175, subd. 1 (Supp.1988). *See* 1978 Minn. Laws ch. 772, § 40; *see also* Minn.Stat. § 257.541, subd. 2 (1988) (for child of unmarried parents, parental rights are determined under sections 518.17 and 518.175). There is no authority establishing that the standard under section 518.175 can be circumvented by proving that the noncustodial parent is unfit for custodial care.

In January 1989, shortly after these proceedings began, appellant was refused visitation with the child because of a social worker's concern that this might interfere with visitation contacts which had begun between the child and her father. Eight months later, on September 1, 1989, the trial court issued its termination order. It is undisputed by the parties that custody of the child was placed with her father shortly after the proceedings were concluded. Thus, there is no design for adoption other than might occur in favor of the step-parent. Under these circumstances, the trial court must address the question whether appellant is unfit for future visitation contact.

As already indicated, the trial court's findings do not state the advantages or disadvantages of future visitation between appellant and her daughter. In its findings on unfitness, the court expressly observed that appellant's circumstances render her "unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental and emotional needs of the child." The findings are legally inadequate and the proceedings should be remanded.

2. Evidence

It is impermissible on our part to make findings of fact omitted by the trial court. *Moylan v. Moylan*, 384 N.W.2d 859, 865 (Minn.1986). In addition, limiting the trial court's prerogative as well as our own, the record here is inadequate to support a finding on the issue of prospective visitation contact. Thus, upon remand the record should be opened to permit presentation of evidence on the essential issue of future visitation contacts.

It is germane, of course, that appellant is unfit for custodial care. In addition, an expert witness indicated that the child was adversely affected by visits in 1987. Notwithstanding this evidence, the present record permits only speculation regarding the need to forever terminate the right of the mother to claim any variety of contact with the child.

It is also significant that appellant had no visitation with the child after February 1988. (For the period after visitation was denied in January 1989, it is difficult to determine whether the absence of appellant's contacts is attributable to appellant's neglect or to her good faith acceptance of the will of her social worker.) The expert witness observed that the child's bond with her mother had largely deteriorated. Here again, something other than speculation is needed to determine whether appellant's conduct translates into a showing of pro-

longed and indeterminant disadvantages in all forms of visitation conduct, including supervised visitation. *See In re Welfare of Chosa,* 290 N.W.2d 766, 769 (Minn.1980) ("it must appear that the present conditions of neglect will continue for a prolonged, indeterminate period").

In sum, the gap in this record is reflected in the appellate argument of counsel for the child:

> If the relationship with the father continues to thrive and the child continues to live with him, there is little or no reason the mother's parental rights have to be terminated. Very possibly in the future if the mother eliminates the chemical dependency and source of abuse from her life, she may begin to develop a relationship with this child. Even though this may not happen for years there is little reason to preclude that at this time. The child's relationship with her father should develop independent of whether the mother's rights are terminated or not.

Brief of Counsel for Respondent H.K. at 3.

Because the law does not permit us to affirm on the present record, I respectfully dissent.