*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-1096**
**A16-1109**

In the Matter of the Welfare of the Children of:
S. M. T. and D. W. T., Parents.

**Filed December 27, 2016**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Isanti County District Court
File No. 30-JV-16-14

Jeffrey R. Edblad, Isanti County Attorney, Timothy C. Nelson, Shila A. Walek, Assistant
County Attorneys, Cambridge, Minnesota (for respondent Isanti County)

Jamison L. Tessneer, Tessneer Law Office, P.A., Cambridge, Minnesota (for appellant-
mother S.M.T.)

Carrie A. Doom, McKinnis & Doom, P.A., Cambridge, Minnesota (for appellant-father
D.W.T.)

Cynthia Bell, Pine City, Minnesota (guardian ad litem)

        Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Tracy M.

Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

        The district court terminated the appellants' respective parental rights to their three

children.  We conclude that the district court did not err by finding that the county made

reasonable efforts to reunify the mother with her children.  But we conclude that the district

court erred by not making any finding as to whether the county proved a statutory ground for termination with respect to the father. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

S.M.T. (mother) and D.W.T. (father) were married in 2008. They are the parents of three children: a girl who was born in October 2008, a girl who was born in February 2011, and a boy who was born in February or March of 2014.

In December 2014, the county removed the children from appellants' home because of a report of unsafe conditions. The county petitioned for a determination that the children were in need of protection or services. The petition alleged, among other things, that there was feces on the floor and on the walls of the girls' bedroom, that there was a potty-chair overflowing with urine and feces in a bedroom closet, that mattresses were soiled and without blankets or pillows, and that cigarette lighters and prescription medication bottles were accessible to the children. The two older children also reported that mother often would lock them in their bedroom. The district court adjudicated the children to be in need of protection or services.

The county developed an out-of-home placement plan (OHPP) that was focused on correcting the conditions in the home, developing parenting skills, and stabilizing mother's mental health. Mother previously had been diagnosed with major depressive disorder with anxiety. The county arranged for a psychological evaluation, weekly therapy sessions, and the assistance of a mental-health-services worker, who testified at trial that mother's mental-health issues required ongoing treatment. The county was concerned about

2

mother's parenting skills because she was unable to read her children's cues and had been observed swearing at her children and dragging them on the ground. In addition, the county was concerned about father's complacency concerning mother's parenting skills and the unsanitary conditions in the home.

In late 2014 or early 2015, mother moved to Wisconsin. She discontinued her weekly sessions with the county mental-health-services person at that time. She had supervised visits with the children twice each week. Father remained in the family home. In August 2015, the county placed the children back in the family home, in father's care, on a trial basis. Father kept the home in a sanitary and safe condition. But the county terminated the placement five months later because father repeatedly allowed mother to have unauthorized unsupervised visits with the children and because the county determined that father was unable to parent the children without mother's involvement and was unable to protect the children from the conditions that led to their removal from the home.

In February 2016, the county petitioned to terminate the parental rights of both mother and father. The county alleged that each parent had neglected to comply with the duties of the parent-child relationship and was palpably unfit to parent. *See* Minn. Stat. § 260C.301, subd. 1(b)(2), (4) (2014). After a four-day trial in May 2016, the district court granted the petition with respect to both mother's and father's parental rights. Both mother and father filed notices of appeal. This court consolidated the appeals.

## D E C I S I O N

Parental rights may be terminated "only for grave and weighty reasons." *In re Child of P.T.*, 657 N.W.2d 577, 583 (Minn. App. 2003), *review denied* (Minn. Apr. 15, 2003).

3

This court will affirm a district court's termination of parental rights if "at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the best interests of the child, provided that the county has made reasonable efforts to reunite the family." *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008) (citations omitted); *see also* Minn. Stat. § 260C.301, subd. 7 (2014).

## I. Mother's Parental Rights

Mother argues that the district court erred by finding that the county made reasonable efforts to reunify her with her children. Mother does not challenge the district court's finding that the county proved a statutory ground for termination.

A district court may terminate parental rights if it finds that a petitioner has proved, by clear and convincing evidence, any statutory ground for termination and that termination is in the children's best interests. Before terminating parental rights, a district court also must find that "the county has made reasonable efforts to reunite the family." *In re Children of S.E.P.*, 744 N.W.2d at 385. In determining whether the county made reasonable efforts, a court shall consider whether services were offered that were "(1) relevant to the safety and protection of the child; (2) adequate to meet the needs of the child and family; (3) culturally appropriate; (4) available and accessible; (5) consistent and timely; and (6) realistic under the circumstances." Minn. Stat. § 260.012(h) (2014). Reasonable efforts "must go beyond mere matters of form so as to include real, genuine assistance." *Matter of Welfare of H.K.*, 455 N.W.2d 529, 532 (Minn. App. 1990), *review denied* (Minn. July 6, 1990). A court should consider "the length of the time the county was involved and the quality of effort given." *Id.* This court applies a clear-error standard

4

of review to a district court's finding that reasonable efforts were made to reunify a parent and a child. *In re Welfare of A.D.*, 535 N.W.2d 643, 648 (Minn. 1995).

In this case, the district court found that the county had made reasonable efforts to reunify mother with her three children by making home visits, by offering her education on parenting skills, by supervising her visits with the children after they were removed from the home, by helping her obtain mental-health services, and by assisting her in finding employment.

The evidentiary record supports the district court's findings. The evidence shows that the county first conducted an assessment of the family in July 2010, though the county determined that services were unnecessary at that time. The county offered mother services related to mental-health and parenting skills in September 2011 after receiving a report that she dragged her daughter across the yard while swearing at her. In April 2012, the county conducted another family assessment after receiving a report that dirty diapers and feces were present in the home, that mother was locking the two older children in their bedroom, and that she was screaming at the children. At that time, the county offered mother services to address her mental health, parenting skills, and drug use. In October 2012, after receiving another report that the apartment smelled of feces, the county referred mother to the Parent Support Outreach program, but she refused to engage with the program. In October 2013, after receiving a report that mother swore at her children in the lobby of the Cambridge Medical Center, the county again referred her to the Parent Support Outreach program, but she again declined the services. In September 2014, after receiving a report that BB guns were being used inside the home, the county offered mother the assistance of

5

a mental-health-services worker. This body of evidence provides ample support for the district court's finding that the county made reasonable efforts to reunify mother with her children.

Mother testified at trial that she had a contentious relationship with the county social worker. She testified that the social worker talked down to her, was cold and distant, and avoided making eye contact with mother. Mother testified that she did not feel that the social worker adequately discussed her progress on the OHPP or that the social worker actually wanted to reunify her with her children. The social worker testified on cross-examination that she initiated contact with mother 27 times during a 16-month period, though only three of those contacts were to discuss mother's OHPP progress and most of them were to discuss the logistics of her supervised visits. Mother also testified that she considered the county's assistance to be unnecessary and "ridiculous." The county sought to prove that mother's negative attitude and negative perception of the county's services adversely affected her relationship with the social worker.

In short, the record contains conflicting evidence as to whether the county made reasonable efforts to reunify mother with her children. The district court was in the best position from which to resolve the conflicts in the evidence. "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Our task on appeal is to determine whether the district court clearly erred. *In re Welfare of A.D.*, 535 N.W.2d at 648. We conclude that the district court did not clearly err because there is substantial evidence in the record to support the district court's finding.

Thus, the district court did not err by finding that the county made reasonable efforts to reunify mother with her children. Therefore, we affirm the district court's order terminating mother's parental rights to the three children.

## II. Father's Parental Rights

Father argues that the district court erred by terminating his parental rights without making a finding as to whether the county proved a statutory ground for termination. An appellate court must "review the district court's findings to determine whether they address the statutory criteria for termination of parental rights and are not clearly erroneous." *In re Children of T.R.*, 750 N.W.2d 656, 660 (Minn. 2008).

The district court found that termination of father's parental rights is in the children's best interests. But the district court did not make a finding that the county had proved, by clear and convincing evidence, a statutory ground for terminating father's parental rights. The statute requires a district court to make a finding that a statutory ground for termination of a person's parental rights exists. *See* Minn. Stat. § 260C.301, subd. 1(b); *In re Children of S.E.P.*, 744 N.W.2d at 385. "[A] clear and specific finding which conforms to the statutory conditions is of critical importance in justifying so important an order as one permanently divesting a natural parent of his parental rights . . . ." *Zerby v. Brown*, 280 Minn. 514, 516, 160 N.W.2d 255, 257 (1968). Because the district court did not make a finding that one of the alleged statutory grounds for termination was proved with respect to father, the district court erred.

We acknowledge father's additional argument that the evidence is insufficient to support a finding that either of the alleged statutory grounds exists. But we cannot review

7

the sufficiency of the evidence in the absence of findings by the district court. *See id.* (reversing and remanding for further findings); *see also Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989) (stating general rule that district court's failure to make findings on relevant statutory factors requires remand).

In sum, we affirm the district court's decision with respect to mother's parental rights. We reverse the district court's decision with respect to father's parental rights and remand for additional findings based on the trial record.

**Affirmed in part, reversed in part, and remanded.**